UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DAVID LETSINGER | CIVIL ACTION NO. 5:12-cv-2444 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| MICHAEL STENNETTE, THOMAS FUEL AND LUBRICANTS, and AMERICAN ZURICH | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court for its consideration is the Defendants' Motion for Summary Judgment in a case stemming from a car accident and a negligence claim brought by David Letsinger ("Plaintiff"). [Record Document 5]. In their motion, the Defendants, Michael Stennette, Thomas Fuel and Lubricants, and American Zurich ("Defendants"), claim that the Plaintiff's negligence suit lacks merit because the allegations and evidence fail to support a genuine factual dispute as to the cause of the accident. [Id.] As part of this motion, the Defendants offer evidence and exhibits in support and move that this Court rules in their favor. [Id.; Record Document 5-2, Ex. A-C]. The Plaintiff offers the same evidence in his opposition to support the claim that there is, in fact, a genuine factual issue as to causation to be litigated, arguing that the circumstances leading up to the accident are uncertain and should be presented at trial. [Record Document 7]. For the reasons explained below, this Court **DENIES** the Defendants' Motion for Summary Judgment. [Record Document 5].

I.      **Factual and Procedural Background**

The dispute between the parties focuses on the possibly negligent actions of Michael Stennette, the Defendant-truck driver, and to what degree, if any, the Plaintiff's negligence contributed to or caused his own injury. The injury to the Plaintiff at issue stems from an automobile accident that took place while the parties' vehicles were traveling northbound on Louisiana Highway 1 ("LA 1") in Caddo Parish, Louisiana, late on the morning of August 16, 2011. Record Document 5-3, Ex. B. LA 1 is an undivided two-lane highway at the location of the incident, and at the time of the accident, it was clear and the road conditions were dry. Id. While the remainder of the facts surrounding the accident are contested, both parties agree that the Defendants' Freightliner fuel truck ("Freightliner") was ahead of the Plaintiff's vehicle when the Plaintiff approached and crashed into the Freightliner at a high rate of speed near railroad tracks that intersect with LA 1. Record Document 5-1, p.1; Record Document 9, p.1.

In the Plaintiff's account of the facts, the Freightliner was "parked on the side of the road just off the shoulder and ahead of the Plaintiff, who was traveling northbound on LA 1." Record Document 9, p.1. Without signaling, the Freightliner entered the highway and "stop[ped] in front of the Plaintiff causing a rear end collision." Id. The Plaintiff claimed to have immediately slammed on his brakes when he saw the Freightliner enter the roadway, but it was too late and he could not avoid the collision. Id.

In contrast, the Defendants claim that the Freightliner was traveling in the roadway well before the accident occurred, but it had "stopped at a set of railroad tracks." Record Document 5-1, p.1. The Defendants state that because the truck carries

fuel, it was "LEGALLY REQUIRED to stop at the Railroad tracks." Record Document 5-2, p.1.[1] The Plaintiff, the Defendants allege, was following behind the Freightliner at roughly 55 to 60 miles per hour and, in addition to his speed, was "not paying attention to the traffic in front of him at the time of the accident," even stating that the Plaintiff admitted he was inattentive. Record Document 5-1, pp.1-2. Given the speed and inattentiveness, the Defendants claim the Plaintiff came to the realization to brake too late and was responsible for colliding with the Freightliner that was legally required to stop at the railroad tracks.

Upon removal of this case from state court, the Defendants filed the instant Motion for Summary Judgment.

## II. Motion for Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To determine whether there exists any genuine factual dispute, parties are empowered to submit to a court materials within the record for support, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(a).[2]

---

[1] The Defendants also make note of the fact that the Plaintiff in his deposition stated that he believed he was required to stop at the railroad crossing, like the Freightliner, but "made no apparent attempt to slow down." Record Document 5-2, p.2.

[2] As Rule 56 explains, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The plain text of Rule 56 requires that, after an appropriate time for discovery, a motion for summary judgment should be entered against an opposing party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. If the movant fails to satisfy their burden of showing that there is no genuine issue of material fact with the motion for summary judgment, such a motion must be denied, regardless of the response by the nonmovant. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Conversely, if the movant satisfies this initial burden, the nonmovant must demonstrate that there is, in fact, a genuine factual issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Id. (citing Celotex Corp., 477 U.S. at 323-25). "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).[3] The failure of the party bearing the initial burden at trial to demonstrate there is a genuine factual dispute to an essential element of their case renders any remaining facts immaterial. See Celotex Corp., 477 U.S. at 322-23.

When considering a motion for summary judgment, courts are to construe all facts and make inferences in the light most favorable to the nonmoving party. Cooper

---

[3] Moreover, Local Rule 56.1 requires the filing of a statement of material facts from the moving party that alleges there is no genuine issue of fact to be tried by the court. Under Local Rule 56.2, the nonmovant must also set forth a "short and concise statement" concerning the existence of genuine factual matters to be tried. Unless controverted by the nonmovant, as required by Local Rule 56.2, all material facts set forth in the statement that is required to be served by the movant will be deemed admitted.

Tire & Rubber Co. v. Farese, 423 F.3d 446, 454 (5th Cir. 2005) (citing Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005)). However, both the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit maintain satisfying this burden on the part of the nonmoving party requires the presentation of supporting evidence. As the Fifth Circuit explained in Little:

> This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. <u>We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts</u>.

Little, 37 F.3d at 1075 (citations omitted) (emphasis in original). While a court is not to weigh the evidence or evaluate witness credibility, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in their favor. Id.; Boudreaux, 402 F.3d at 540.

### III.   Law and Discussion

The present personal injury dispute arises under Louisiana law and the alleged negligence of the Defendants when the Plaintiff's vehicle collided with the back of the Defendants' Freightliner. Under Louisiana's duty-risk analysis, a plaintiff asserting a negligence claim must establish:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope

of liability or scope of protection element); and (5) proof of actual damages (the damages element).

Poindexter v. United States ex rel. Corps of Eng'r, 568 F. Supp. 2d 729, 734 (W.D. La. 2008) (quoting Long v. State ex rel. Dept. of Transp. & Dev., 2004-0485, p.21 (La. 6/29/05); 916 So. 2d 87, 101). In addition to these negligence elements and to counter the Plaintiff's assertions, the Defendants argue that Louisiana jurisprudence establishes that the "following driver" in a motor-vehicle accident is presumed to be at fault and the cause of the accident. Record Document 5-2, p.4. In response, the Plaintiff counters that such a presumption is inapplicable in the instant case, because until the Freightliner pulled onto the roadway from the shoulder, the Plaintiff was not "following" the Defendants' truck.[4] Record Document 7, p.3.

Thus, this matter boils down to whether, even in a light most favorable to the Plaintiff, the evidence supports the finding that there is no genuine factual question as to the cause-in-fact of the accident. In support of their motion, the Defendants submit the deposition of Deputy Sean McCullough ("Deputy McCullough"), who is employed by the Caddo Parish Sheriff's Office; Deputy McCullough's Crash Report ("Crash Report"); and the Plaintiff's own deposition. Record Document 5-3, Ex. A-C.

In the Crash Report, Deputy McCullough provides his factual findings on what happened during the incident in question. Based on Deputy McCullough's initial findings, the Crash Report explains that the Freightliner was stopped at the railroad

---

[4] In their Memorandum in Support, the Defendants note that there are certain exceptions to overcome this "following driver" presumption, such as the existence of a sudden emergency. Record Document 5-2, p.5. The Plaintiff, however, does not address any of these exceptions and instead argues that the proximate cause of the accident was the Freightliner's decision to enter the roadway from the shoulder, causing the rear-end collision. Record Document 7, pp.2-3.

tracks that cross LA 1, and its hazard lights were activated when it was struck from behind by the Plaintiff's vehicle. Id., Ex. B, p.2. After the collision, the report notes, the Freightliner pulled onto the shoulder while pulling the Plaintiff's vehicle, which became attached to the tanker truck during the accident. Id. Moreover, according to both Deputy McCullough's deposition and the Crash Report, in the moments after the crash, the Plaintiff stated to Deputy McCullough that he was not attentive before the accident and only realized the Freightliner was stopped at the railroad tracks when it was too late to avoid the collision. Id., Ex. A-B. In the Crash Report, Deputy McCullough recorded that the "[Plaintiff] said he was not paying attention, realized veh. #2 [the Defendants' truck] was stopped at R/R crossing. He hit his brakes, but could not stop, striking the rear of Vehicle #2." Id., Ex. B, p.2. This explanation of events is reiterated in Deputy McCullough's deposition, in which he confirmed he wrote down verbatim what the Plaintiff said to him in the moments after the accident. Id., Ex. A, p.10 ("The driver said he was not paying attention."). Taken together, this evidence supports the Defendants' account of events and their motion for summary judgment.

    The Court, nevertheless, must examine to what extent the Crash Report and Deputy McCullough's recitation of the Plaintiff's statements are admissible for purposes of supporting the Defendants' motion. Although not all law enforcement reports are admissible, evidence gleaned by officers and from others in certain police reports, like accident reports, are admissible under the public records hearsay exception found in

Federal Rule of Evidence 803(8).[5] This exception applies in civil cases to an officer's first-hand observations that result from their investigation and experience. Reliastar Life Ins. Co. v. Thompson, No. M-07-140, 2008 WL 4327259, at *4 (S.D. Tex. Sept. 16, 2008); Harris v. Browning-Ferris Indus. Chem. Servs., Inc., 635 F. Supp. 1202, 1209 (M.D. La. 1986), aff'd, 806 F.2d 259 (5th Cir. 1986). However, there is a limitation on this exception: while factual findings are permitted under Rule 803(8), the opinions and conclusions of an officer as they relate to the accident are not permitted. See Reliastar Life Ins. Co., 2008 WL 4327259, *5. As a result, Deputy McCullough's factual findings in the Crash Report and his reconstruction of the event are pieces of evidence this Court may consider in support of the Defendants' motion. The Court, however, cannot consider any of the opinions of Deputy McCullough or the Crash Report that express which party was the cause-in-fact of the accident.

The Court may also consider the statements that the Plaintiff made to Deputy McCullough after the accident, which are provided in the Crash Report as well. While these statements could be excluded as hearsay within hearsay, they fall within another exception to the hearsay rules. See Harris, 635 F. Supp. at 1209. These statements are admissible and not considered hearsay under Federal Rule of Evidence 801(d)(2)(A), because these statements are offered against an opposing party and were made in the Plaintiff's individual capacity. Fed. R. Evid. 801(d)(2)(A). The Plaintiff's initially-admitted lack of attention calls into question both the accuracy of his recollection and his later

---

[5] Under Rule 803(8), the record or statement of a public official is admissible if it is in a civil case and it sets out the "factual findings from a legally authorized investigation" and neither "the source of the information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).

assertions that he saw the Freightliner on the side of LA 1 and immediately slammed on the brakes when he saw the truck pull onto the roadway. As discussed more below, the Plaintiff's contradictory statements create issues in terms of the Plaintiff's credibility as a witness, but they do not establish the Defendants' construction of the events as true.

Additionally, the Crash Report includes statements from both the Freightliner's passenger and an independent witness who was not involved in the accident. Record Document 5-3, Ex. B. Both these statements support the Defendants' account of the events.[6] These statements, however, are not admissible because they are third-party statements contained within an accident report. Manis v. Lawson, 585 F.3d 839, 844 n.3 (5th Cir. 2009) ("Third party statements included in a police report are not admissible under the public records exception to the hearsay rule."); see also Barnes v. Commerce & Indus. Ins. Co., No. 11-0041, 2013 WL 6118352, at *1 (W.D. La. Nov. 20, 2013); Harris, 635 F. Supp. at 1209.

When considered together, the Defendants have presented sufficient evidence to carry their burden of establishing that there is no genuine factual issue as to the cause-in-fact of the accident. See Celotex Corp., 477 U.S. at 322. Because the Defendants have satisfied this burden, the Court must now undertake an analysis of whether the evidence the Plaintiff offers in opposition is sufficient enough to establish that there is a genuine factual dispute as to the cause of the Plaintiff's accident. See id. at 323-25; see

---

[6] According to the passenger of the Freightliner, he and the driver were stopped "at the railroad crossing when [they] where (sic) hit from behind." Record Document 5-3, Ex. B., p.7. Even more supportive of the Defendants' claim, an independent witness reported, "I seen (sic) the Thomas Petroleum truck stop at the railroad track with hazard lights on and the lock and safe van ran into the back of the Thomas Petroleum truck." Id. P.9. This independent witness affirms the Defendants' account and the fact that the Freightliner's hazard lights were activated. Both these statements were made roughly thirty minutes after the accident occurred. Id., pp.7,9.

also Boudreaux, 402 F.3d at 540 ("A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). In making this determination, the Court must construe the facts and make inferences in a light most favorable to the Plaintiff. Cooper Tire & Rubber Co., 423 F.3d at 454.

The Plaintiff offers a simple explanation for why there is a genuine factual issue as to causation using the same evidence as the Defendants: the Freightliner pulled onto LA 1 at such a moment that there was no way for the Plaintiff to avoid the accident. Record Documents 7, 9. In his deposition, the Plaintiff states that the Freightliner was ahead of him on the shoulder the first time he noticed it and that the people within the truck may have been eating lunch because somebody littered out the passenger window on the shoulder before the accident. Record Document 9, Ex. C, pp.21-23. The Plaintiff goes on to explain that right after he noticed the Freightliner on the shoulder of LA 1, "[the Freightliner] pulls out and in a distance that's–I'm wondering why he's pulling out in front of me at that point, because when I look up he's–he's right there up on the road." Id., p.22. The Plaintiff continues:

> He pulls out in front of me and stops at this railroad crossing thing. I don't know how long. I'm doing 55 miles an hour, and he pulls out that–pulls out in front of me where there's just not a lot of room to–I can't do anything. There's oncoming traffic. I got nowhere to go. I stand on the brake as hard as I can.

Id., p.23. In this account of the events, the Plaintiff did not come up from behind the Freightliner and then crash into the back of it; rather, he collided with the back of the Defendants' truck when it pulled from the shoulder onto the roadway with no time to avoid the collision. Id., p.25.

These statements, and others like it, are the only supporting evidence the Plaintiff

provides to rebut the claims and other evidence presented by the Defendants. Although the assertions are unsupported by other evidence and possibly self-serving, the Plaintiff's explanation of events is sufficient to cause reasonable jurors to disagree as to which party caused the accident. See Boudreaux, 402 F.3d at 540. Thus, the Plaintiff has presented a plausible alternative explanation that a jury should be able to consider: whether the Freightliner was properly on the roadway but acted negligently by pulling onto the road only moments before the accident.[7] At this stage of the litigation, it is not the Court's role to weigh the credibility of the Plaintiff's account or that of the other possible witnesses, like Deputy McCullough. Boudreaux, 402 F.3d at 540; Little, 37 F.3d at 1075.

## IV. Conclusion

Thus, in considering the facts presented as to the cause of the accident in a light most favorable to the Plaintiff, this Court must **DENY** the Defendants' Motion for Summary Judgment [Record Document 5] because the Plaintiff has established a factual dispute where a reasonable jury could return a verdict in his favor.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on the 26th of September, 2014.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[7] Such an explanation could also fall within the exceptions to the presumption found in Louisiana law that the "following driver" is negligent.